IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MELISSA E. BROOM,                    :
                                     :
        Plaintiff,                   :
                                     :
vs.                                  :        CIVIL ACTION 12-0357-M
                                     :
MICHAEL J. ASTRUE,                   :
Commissioner of Social Security,     :
                                     :
        Defendant.                   :


MEMORANDUM OPINION AND ORDER


        In this action under 42 U.S.C. § 1383(c)(3), Plaintiff

seeks judicial review of an adverse social security ruling which

denied a claim for Supplemental Security Income (hereinafter

*SSI*) (Docs. 1, 13).  The parties filed written consent and this

action has been referred to the undersigned Magistrate Judge to

conduct all proceedings and order the entry of judgment in

accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc.

20).  Oral argument was waived in this action.  Upon

consideration of the administrative record and the memoranda of

the parties, it is **ORDERED** that the decision of the Commissioner

be **AFFIRMED** and that this action be **DISMISSED**.

        This Court is not free to reweigh the evidence or

substitute its judgment for that of the Secretary of Health and

1

Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was twenty-eight years old, had completed a high school education[1] (Tr. 58), and had no relevant previous work experience (*see* Tr. 47). In claiming benefits, Plaintiff alleges disability due to a right humerus fracture status post open reduction internal fixation (ORIF) and borderline personality disorder (Doc. 13 Fact Sheet).

The Plaintiff filed an application for SSI on February 1, 2010 (Tr. 128-311; *see also* Tr. 29). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that although Broom had no relevant past work experience, there were jobs which she could perform (Tr. 29-49).

[1]**Error! Main Document Only.**Plaintiff testified that she had received

Plaintiff requested review of the hearing decision (Tr. 22-23) by the Appeals Council, but it was denied (Tr. 1-6).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, Broom alleges the single claim that she is not capable of performing medium range work (Doc. 13). Defendant has responded to—and denies—this claim (Doc. 15). The relevant evidence of record follows.[2]

Records from Springhill Medical Center show that Broom was admitted on January 4, 2010 for sixteen days for what appeared to be a suicide attempt, heavily influenced by alcohol, in which she jumped from a 20-30 foot overpass (Tr. 230-37). Injuries were as follows: a right humeral fracture; fractures of the T12, L1, L2, L3, and L4; a grade III-IV liver fracture with hemoperitoneum; and a right renal fracture laceration. During the first several days, Plaintiff developed severe psychosis to the extent that she was disoriented in three spheres and confused for which she received psychiatric intervention. Broom also underwent an ORIF of the right humerus and primary repair of the pectoralis tendon to the bone while hospitalized.

On April 20, 2010, Plaintiff was consultatively examined by

---

a Graduate Equivalency Degree (Tr. 40).
[2]Plaintiff asserts disability as of January 1, 2010 (Tr. 128), so the Court will not review evidence generated more than a year prior to

Dr. Henrietta T. Kovacs who noted complaints of pain in the
right arm and right shoulder, pain in the tailbone and thighs,
and insomnia; Broom was alert, oriented, and in no distress (Tr.
238-44).  The doctor noted that Plaintiff had full range of
motion (hereinafter *ROM*) in the right shoulder, though she
complained of pain radiating into her neck.  Kovacs performed
ROM analysis, noting no limitations in the cervical spine,
shoulders, elbows and forearms, knees, ankles, or wrists; though
she could only flex her dorsolumbar spine 75° (out of 90°),
other measurements were within normal limits.  No measurements
were taken of the hips.  The doctor's impression was as follows:
(1) possible polycystic ovarian syndrome but her history is more
indicative of dysmenorrhea or endometriosis; (2) right shoulder
and arm pain status post open reduction and internal fixation of
compound fracture of right humerus; (3) coccygodnia; (4)
borderline personality disorder; (5) low back pain in flexion;
(6) history of ETOH and tobacco abuse; and (7) strange gait.[3]

On April 29, 2010, Psychologist John W. Davis examined
Plaintiff, noting no unusual gait or posture abnormalities (Tr.

---

that date.  Other current evidence not considered relevant to the
particular claim raised will, likewise, not be reviewed herein.
    [3]Kovacs stated that "[p]atient had 2 to 3 steps normal then she
was limping by not bending the right knee and the right hip properly,
then again she had a few normal steps and then the limping with the
failure of bending the hip and knee properly.  I cannot fathom what

245-49).  Conversation was normal; Broom showed some anxiety and depression but displayed the capacity for a full range of emotional qualities.  Plaintiff's mood was generally one of agitated depression, though she seemed to have the capacity for a positive affect; Broom was oriented in three spheres.  There were no loose associations, tangential or circumstantial thinking, or confusion; judgment and insight were considered to be impaired.  Plaintiff was thought to be of low average intelligence; she "exhibited symptoms consistent with Borderline personality disorder as evidenced by anger, dramatics, manipulation, victim mentality, [and] self-centered[ness]" (Tr. 248).  Davis's diagnosis impression was severe borderline personality disorder with a guarded prognosis, noting that it was "reasonable to expect a favorable response to treatment within a year or two" (Tr. 248).  The Psychologist thought that Broom had the following restrictions:

> The claimant's ability to understand and remember simple instructions, carry out simple instructions, and make judgments on simple work-related decisions is mildly impaired.
> The claimant's ability to understand and remember complex instructions, carry out complex instructions, and make judgments on complex work-related decisions is moderately

---

could cause such a strange walking pattern" (Tr. 241).

> impaired.
>      The claimant's ability to interact
> appropriately with the public, interact
> appropriately with supervisors and interact
> appropriately with co-workers, respond
> appropriately to usual work situations and
> to changes in routine setting is presently
> markedly impaired, but should improve.
>      The claimant cannot manage any benefits
> that are forthcoming due to poor judgment.

(Tr. 248-49).

On April 30, 2010, a non-examining "State agency psychological consultant" (Tr. 43), M. Hope Jackson, Ph.D., completed a psychiatric review technique form, based on the evidence of record as of that time, in which she indicated that Plaintiff had a borderline personality disorder (Tr. 251-63). Jackson indicated that Broom had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, but had had no episodes of decompensation (Tr. 260).  The Non-examiner also completed a mental residual functional capacity (hereinafter *RFC*) assessment in which she indicated that Plaintiff would be moderately limited in her ability to do the following:  understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; interact appropriately with the general

6

public; accept instructions and respond appropriately to
criticism from supervisors; get along with coworkers or peers
without distracting them or exhibiting behavioral extremes; and
respond appropriately to changes in the work setting (Tr. 264-
67).  Jackson also offered the following conclusions:

> [] Claimant has the ability to
> understand, remember, and carry out very
> short, simple instructions.  She can pay
> attention for 2 hour periods.
> [] Contact with the general public and
> coworkers should be limited in the
> workplace.  Supervision and feedback should
> be presented tactfully and in a non-
> confrontational manner.
> [] Changes in the workplace should be
> infrequent.

(Tr. 266).

On June 23, 2010, Dr. E. Russell March, Jr., a non-
examining physician with the Social Security Administration,
completed a physical RFC assessment in which he indicated that
Broom was capable of lifting and carrying up to fifty pounds
occasionally and twenty-five pounds occasionally (Tr. 268-75).
Plaintiff would also be able to stand or walk for six hours in
an eight-hour day; she would, however, be limited in her ability
to use hand controls.  Although Broom would never be able to
climb ladders, she could climb stairs occasionally; she would be

7

able to balance, stoop, kneel, crouch, and crawl frequently, however.  She would also be limited in her ability to reach in all directions, including overhead; Plaintiff should also avoid working around machinery and at heights.

Treatment records from Altapointe Health Systems show that, on January 27, 2010, Broom was diagnosed with severe, recurrent, major depressive disorder, alcohol abuse, and borderline personality disorder (Tr. 340; *see generally* Tr. 276-345).  Her GAF rating at that time was 51.[4]  On February 8, Plaintiff began individual therapy sessions (Tr. 336).  In one of those sessions a month later, Broom talked of her alcohol dependence and problem with night terrors; the therapist noted the discrepancies between her words and actions (Tr. 333-34).  On March 23, Plaintiff was described as euthymic; she complained of tiredness and not sleeping well at night with the Trazodone[5] which increased nightmares and leg cramps (Tr. 328-29).  The Trazodone was discontinued, the Effexor[6] continued, and a sleep

---

[4]**Error! Main Document Only.**"A GAF score between 51-60 indicates "moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning (*e.g.*, few friends, conflicts with peers or co-work)."  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 32 (4th ed. 1994).

[5]**Error! Main Document Only.***Trazodone* is used for the treatment of depression.  *Physician's Desk Reference* 518 (52nd ed. 1998).

[6]**Error! Main Document Only.***Effexor* is used "for the treatment of

medication was prescribed.  In a therapy session on March 29,
2010, Broom discussed her "need" to fix other people rather than
focusing on her own problems (Tr. 323-24); two weeks later, the
therapist discussed Plaintiff's failure to attend all of her
therapy sessions and obtained Plaintiff's renewed commitment to
treatment (Tr. 317-18).  On April 20, Broom expressed anxiety
due to an anticipated massage therapy national exam; it was
noted that she had limited insight into her alcohol use (Tr.
315-16).  Following a therapy session nine days later, Plaintiff
was noted to have a mildly elevated mood and only fair insight
and judgment (Tr. 312-13).  On May 10, Broom stated that she had
been a little depressed because of a breakup with her boyfriend;
this also caused loss of sleep and an episode of intoxication
(Tr. 309-10).  On May 25, Plaintiff reported low energy, crying
spells, and increased drinking because of her breakup; the
therapist rated her insight as poor (Tr. 303-04).  On June 8,
Broom had reconciled with her boyfriend which improved her mood
and sleep; the doctor rated her insight as fair, judgment as
poor, and anxiety as mild (Tr. 301-02).  On September 20,
Plaintiff stated that she was taking her medications as
prescribed and was doing well; she enjoyed daily activities and

depression.  *Physician's Desk Reference* 3037 (52nd ed. 1998).

reported no anxiety or thoughts of hopelessness or worthlessness
though she still had nightmares two-to-three nights per week
(Tr. 290-92).  The next record of contact was on February 14,
2011 which noted sadness; insight and judgment were considered
to be good (Tr. 287-88; *see also* Tr. 285-86).  On July 18, Broom
stated that she had not been sleeping during the past week and
felt exhausted, anxious, and stressed; it was noted that she
seemed to be "making an effort to sound 'unusual'" (Tr. 347; *see
generally* Tr. 347-50).  The RN characterized her insight as
poor, judgment as fair, and anxiety as mild while the CNRP rated
Broom's insight and judgment as good with no anxiety.

In her administrative decision, the ALJ reached the
following conclusion regarding Broom's ability to work:

> [T]he undersigned finds that the claimant
> has the residual functional capacity to
> perform less than the full range of medium
> work as defined in 20 C.F.R. 416.967(c), in
> function by function terms (SSRs 83-10 and
> 06-8p), with certain non-exertional
> restrictions associated with that level of
> exertion.  The claimant's specific physical
> capabilities during the period of
> adjudication have been the ability to
> lift/carry up to 50 pounds occasionally and
> 25 pounds frequently; stand/walk with normal
> breaks for a total of 6 hours in an 8-hour
> workday; sit with normal breaks for a total
> of about 6 hours in an 8-hour workday;
> push/pull arm controls with the right upper
> extremity occasionally, and push/pull arm

10

> controls with the left upper extremity with
> no limitation; climb ramps/stairs
> occasionally; balance, stoop, kneel, crouch
> and crawl frequently; perform overhead
> reaching with the right upper extremity
> occasionally, with no limitations in
> overhead reaching with the left upper
> extremity; push/pull leg controls with no
> limitations; handle, finger and feel
> bilaterally with no limitation; and work in
> a job that does not require her to be able
> to climb ladders, ropes or scaffolds.  The
> claimant's specific mental capabilities
> during the period of adjudication have been
> the ability to perform simple, routine,
> repetitive tasks (SRRTs); have brief,
> superficial contact with the public; have
> brief contact with co-workers and work
> independently, but could work in close
> proximity to coworkers; handle supervision
> given in a non-threatening manner; and adapt
> to minimal changes in the work setting.

(Tr. 34-35).  In reaching this determination, the ALJ found that

Broom's testimony regarding her limitations was not credible

(Tr. 36), a finding not challenged in this action (*see* Doc. 13).

The ALJ noted that "the record does not contain any opinions

from treating physicians indicating that the claimant is

disabled or even has limitations greater than those determined

in this decision" before going on to assign "great weight" to

the opinions and conclusions of Dr. March and Psychologist

Jackson (Tr. 46).  This concludes the medical evidence.

Plaintiff claims that the ALJ erred in finding that she is capable of performing medium range work.  Broom asserts that she is not capable of performing either the physical or mental components of medium work (Doc. 13).  "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work."  20 C.F.R. § 416.967(c) (2012).  The Court notes that the ALJ is responsible for determining a claimant's residual functional capacity (hereinafter *RFC*).  20 C.F.R. § 416.946 (2012).

In bringing this claim, the main thrust of Broom's argument is that the ALJ relied on the opinions and conclusions of March and Jackson, neither of which examined her.  Plaintiff has also provided the corollary argument that the ALJ's acceptance of the conclusions of the physicians who actually examined her, *viz.*, Davis and Kovacs, would have resulted in a less demanding residual functional capacity finding.

Psychologist Davis found Plaintiff markedly limited in her ability to interact appropriately with the public, supervisors, and co-workers and in her ability to respond appropriately to usual work situations as well as changes in those situations

(Tr. 249).  Davis suggested other lesser limitations as well
(Tr. 248-49).  The Court notes that the records from Altapointe
Health Systems, over the one and one-half years relevant to this
action, do not support the limitations suggested by Davis (Tr.
276-345).  Those records are more consistent with the
conclusions of Psychologist Jackson regarding Broom's abilities.

The Court would also note that the Altapointe records
demonstrate Plaintiff's failure to seek the treatment available
to her as her sessions dwindled to, approximately, one every
four months.  The records demonstrate that she refused treatment
(*see* Tr. 296, 317, 319, 321, 322, 325).  The Social Security
regulations state that "[i]n order to get benefits, you must
follow treatment prescribed by your physician if this treatment
can restore your ability to work."  20 C.F.R. 416.930(a) (2012).
The regulation goes on to state that "[i]f you do not follow the
prescribed treatment without a good reason, we will not find you
disabled or, if you are already receiving benefits, we will stop
paying you benefits."  20 C.F.R. § 416.930(b) (2012); *see also
Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988).  Broom's
failure to seek treatment belies her claim for disability.

With regards to the physical RFC, Plaintiff admits that
although Dr. Kovacs examined her, she did not provide an

13

evaluation of her ability to perform work-related activities
(Doc. 13, p. 10).  What she does direct this Court's attention
to, however, is her telling the doctor that she had previously
suffered a tailbone injury which caused problems for her with
sitting (Doc. 13, p. 13; *cf.* Tr. 238).  The coincidence of this
communication with Dr. Kovacs, coupled with Dr. March's failure
to indicate how long he thought Broom could sit during an eight-
hour-day (*see* Tr. 269), forms the basis of Plaintiff's argument
that the ALJ incorrectly determined that she was capable of
physically performing medium level work.

In reaching his determination that Dr. March's conclusions
were to be given great weight, the ALJ noted that Broom "has not
sought treatment for her physical impairments since her release
from the hospital in January 2010" (Tr. 46).  The Court notes,
with regard to her tailbone, that Broom declined a scheduled
back x-ray to see if she had bone fragments in her vertebra; as
such, no actual proof exists of the broken bone.  Social
security regulations state that Plaintiff is responsible for
providing evidence from which the ALJ can make an RFC
determination.  20 C.F.R. § 416.945(a)(3).  Plaintiff's mere
assertion of an inability to sit, without objective medical

evidence, provides no basis for her argument that she cannot sustain the sitting requirements of medium exertion work.

Plaintiff has raised a single claim in bringing this action.  The Court finds that the ALJ's conclusions are supported by substantial evidence.  Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.  Judgment will be entered by separate Order.

DONE this 3rd day of January, 2013.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE